Sara S. Demirok (AZ# 031970)
Elise F. Oviedo (AZ # 030248, NM # 145718)
Judith E. Davila (AZ #031200)
National Labor Relations Board, Region 28
2600 N. Central Avenue, Suite 1400
Phoenix, Arizona  85004
Tel:   (602) 640-2123
Fax:  (602) 640-2178
Email:  sara.demirok@nlrb.gov
        elise.oviedo@nlrb.gov
        judith.davila@nlrb.gov
Attorneys for Petitioner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

CORNELE A. OVERSTREET,
Regional Director of the Twenty-Eighth
Region of the National Labor Relations
Board, for and on behalf of the
National Labor Relations Board,

                Petitioner,

    v.

SHAMROCK FOODS COMPANY,

              Respondent.

Case No.

PETITION FOR TEMPORARY
INJUNCTION UNDER SECTION 10(j)
OF THE NATIONAL LABOR
RELATIONS ACT, AS AMENDED
[29 U.S.C. § 160(j)]

(Oral argument requested)

        Cornele A. Overstreet, Regional Director of Region 28 (Regional Director) of the National Labor Relations Board (Board), petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)] (Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending a decision by the Board, on a complaint issued by the General Counsel of the Board

(General Counsel), alleging, inter alia, that Shamrock Foods Company (Respondent) has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and (3)].   In support of this petition, Petitioner respectfully shows the following:

1.      Petitioner is the Regional Director of Region 28 of the Board, an agency of the United States, and files this petition for and on behalf of the Board.

2.      This Court has jurisdiction pursuant to Section 10(j) of the Act [29 U.S.C. § 160(j)], which provides, inter alia, that the Board shall have the power, upon issuance of a complaint charging that any person has engaged in unfair labor practices, to petition this Court for appropriate temporary injunctive relief or a restraining order pending final disposition of the matter by the Board.

3.      (a)      On April 15, 2015, Bakery, Confectionery, Tobacco Workers' and Grain Millers International Union, Local Union No. 232, AFL-CIO-CLC (Union), filed a charge with the Board, in Case 28-CA-150157, alleging, inter alia, that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) of the Act [29 U.S.C. § 158(a)(1)].  PX 1.[1]

(b)      On May 22, 2015, the Union filed a first amended charge with the Board, in Case 28-CA-150157, alleging, inter alia, that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act  [29 U.S.C. § 158(a)(3)].  PX 3.

---

[1] Petitioner has filed evidence in support of this Petition, contained within an Appendix of Exhibits, which includes the affidavits and supplemental exhibits.  References to the Appendix of Exhibits will be designated as "PX" followed by the appropriate exhibit number, and, as appropriate, the page and line number(s) of the respective exhibit.

(c)     On June 26, 2015, the Union filed a second amended charge with the Board, in Case 28-CA-150157, alleging, inter alia, that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act  [29 U.S.C. § 158(a)(1) and (3)].  PX 5.

4.     (a)     The aforesaid charges were referred to Petitioner as Regional Director for Region 28 of the Board.

(b)     Upon receipt of the charges described above in paragraph 3, and after the investigation of the charges in which Respondent was given the opportunity to present evidence and legal argument, the General Counsel, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued a Complaint and Notice of Hearing on July 21, 2015 (Complaint), alleging that Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act  [29 U.S.C. § 158(a)(1) and (3)].  PX 7.

(c)     On August 4, 2015, Respondent filed its Answer to the Complaint (Answer to Complaint), denying the commission of any unfair labor practices.  PX 8.

(d)     The General Counsel, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued an Amendment to the Complaint on August 14, 2015 (Amendment) on August 13, 2015.  PX 9.

(e)     On August 26, 2015, Respondent filed its Answer to the Amendment (Answer to Amendment), denying the commission of any unfair labor practices.  PX 10.

(f)     A hearing before an administrative law judge of the Board has been noticed and is scheduled to commence on September 8, 2015, in Phoenix, Arizona.

5.     There is reasonable cause to believe that the allegations set forth in the Complaint are true and Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act  [29 U.S.C. § 158(a)(1) and (3)], which are affecting commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. § 152 (6) and (7)], for which a remedy will be ordered by the Board, but that the Board's order for such remedy will be frustrated without the temporary injunctive relief sought herein.  Petitioner asserts that there is a substantial likelihood of success in prevailing in the underlying administrative proceedings in Case 28-CA-150157, and establishing that Respondent has engaged in, and is engaging in, unfair labor practices in violation of Section 8(a)(1) and (3) of the Act  [29 U.S.C. § 158(a)(1) and (3)] by, inter alia, threatening employees with adverse employment actions because of their support for the Union; interrogating employees about their protected activities; spying on its employees as they engage in protected activities and making employees believe that their protected activities are constantly under surveillance; soliciting grievances from employees and promising to correct those grievances in an effort to undermine union support; instructing employees to ascertain and disclose employees' sympathies for the Union; and confiscating employees' union literature, and issuing discriminatory discipline to an vocal union supporter and discharging another prominent union supporter because of their activities protected under Section 7 of the Act [29 U.S.C. § 157], including their activities in support of the

Union.  In support thereof, and of the request for temporary injunctive relief, Petitioner, upon information and belief, shows the following:

(a)     (1)     At all material times, Respondent has been a corporation with an office and place of business in Phoenix, Arizona (Respondent's facility), and has been engaged in the wholesale distribution of food products.

(2)     In conducting its operations during the 12-month period ending April 15, 2015, Respondent purchased and received at its facility goods valued in excess of $50,000 directly from points outside the State of Arizona.

(3)     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act  [29 U.S.C. § 152(2), (6), and (7)].

(b)     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act [29 U.S.C. § 152(5)].

(c)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondents within the meaning of Section 2(11) of the Act [29 U.S.C. § 152(11)] and agents of Respondents within the meaning of Section 2(13) of the Act [29 U.S.C. § 152(13)]:

| | | |
|---|---|---|
| Ivan Vaivao | - | Warehouse Operations Manager |
| Mark Engdahl | - | Vice-President of Operation Foods Service |
| Kent McClelland | - | Chief Executive Officer |
| Dwayne Thomas | - | Third Shift Supervisor |
| Joe Remblance | - | Safety Manager |
| Armando Gutierrez | - | Warehouse Supervisor |
| Jerry Kropman | - | Plant Manager |
| Bob Beake | - | Director of Human Resources |
| Natalie Wright | - | Manager of Human Resources |
| David Garcia | - | Forklift Manager |
| Brian Nicklen | - | Forklift Manager |
| Jake Myers | - | Day Systems Shipping Supervisor |

| Leland Scott | - | Night Shift Dock Supervisor |
| Karen Garzon | - | Sanitation Supervisor |
| Art Manning | - | Floor Captain |
| Zack White | - | Floor Captain |

(d)   (1)   About March 31, 2015, Respondent's employee Thomas Wallace concertedly complained to Respondent regarding the wages, hours, and working conditions of Respondent's employees, by criticizing the health benefits offered by Respondent to employees during a Town Hall staff meeting at Respondent's facility.

(2)   About January 25, 2015, Respondent, by Zack White, at Respondent's facility:

(i)   interrogated its employees about their union membership, activities, and sympathies of other employees; and

(ii)   by telling its employees that there were rumors in the warehouse about an organizing campaign, created an impression among its employees that their union activities were under surveillance by Respondent.

(3)   About January 28, 2015, Respondent, by Mark Engdahl (Engdahl), at Respondent's facility:

(i)   threatened its employees with loss of benefits by telling employees that when employees are represented by a union, the slate is wiped clean on wages, benefits, and other working conditions once collective bargaining begins; and

(ii)   granted employees benefits by telling employees who complained about working conditions to make an appointment to come see Respondent.

6

(4)     About January 28, 2015, Respondent, by Natalie Wright (Wright), at Respondent's facility, by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if its employees refrained from union organizational activity.

(5)     About January 28, 2015, Respondent, by Jake Myers, at Respondent's facility, interrogated its employees about their union membership, activities, and sympathies.

(6)     About January 28, 2015, Respondent, by Art Manning (Manning), at Denny's restaurant on I-17 and Thomas Road in Phoenix, Arizona, engaged in surveillance of its employees engaged in union activities.

(7)     About February 5, 2015, Respondent, by Ivan Vaivao (Vaivao), at Respondent's facility, by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if its employees refrained from union organizational activity.

(8)     About mid-February, 2015, a more precise date being unknown to the General Counsel, by Vaivao and Wright, at Respondent's facility, by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if its employees refrained from union organizational activity.

(9)     About February 24, 2015, Respondent, by Vaivao, at Respondent's facility:

(i)    by telling its employees that Respondent had an idea of who was organizing, created an impression among its employees that their union activities were under surveillance by Respondent; and

(ii)    by asking its employees to raise their hand to let Respondent know if another employee contacted them, asked its employees to ascertain and disclose to Respondent the union membership, activities, and sympathies of other employees.

(10)   About March 26, 2015, Respondent, by Vaivao, Brian Nicklen (Nicklen) and a Human Resource Representative, whose name is currently unknown to the General Counsel, created an impression among its employees that their union activities were under surveillance by Respondent by:

(i)    telling its employees that Respondent knows everything that is going on;

(ii)    telling its employees that they should know that Respondent knows who they are;

(iii)    telling its employees that Respondent knows exactly who they are; and

(iv)    telling its employees that Respondent knew there was a union meeting off property a few weeks ago and that Respondent knew who attended these meetings.

(11)   About March 26, 2015, Respondent, by Vaivao, Nicklen and a Human Resource Representative, whose name is currently unknown to General

Counsel, informed its employees that it would be futile for them to select the Union as their bargaining representative by telling employees that shifts cannot be changed.

(12)   About April 6, 2015, Respondent discharged employee Thomas Wallace (Wallace).

(13)   Respondent engaged in the conduct described above in paragraph 5(a)(12), because Wallace engaged in the conduct described above in paragraph 5(a)(1), and to discourage employees from engaging in these or other concerted activities.

(14)   About April 6, 2015, Respondent promulgated and since then has maintained the following overly-broad and discriminatory rules in its Separation Agreement and Release and Waiver as presented to employee Wallace on that same date:

(i)   **Paragraph 9**
Because the information in this Separation Agreement is confidential, it is agreed that you will not disclose the terms of this Separation Agreement to anyone, except that you may disclose the terms of this Separation Agreement to your family, your attorney, your accountant, a state unemployment office, and to the extent required by a valid court order or by law.

(ii)   **Paragraph 10**
All information, whether written or otherwise, regarding the Released Parties' businesses, including but not limited to financial, personnel or corporate information . . . are presumed to be confidential information of the Released Parties for purposes of this Agreement.

(iii)   **Paragraph 12**
You may not use/disclose any of the Company's Confidential Information for any reason following your termination and during the transition period.

(iv)   **Paragraph 13**
You agree not to make any disparaging remarks or take any action now, or at any time in the future, which could be detrimental to the Released Parties.

1

2      (15)   About April 27, 2015, Respondent, by Manning, at

3  Respondent's facility:

4      (i)   by telling its employees that Respondent knew which

5  employees announced they were organizing for the union in the break room at

6  Respondent's facility, engaged in surveillance of employees engaged in union activities;

7  and

8      (ii)   threatened its employees with unspecified reprisals

9
   by telling employees that they had better watch their back because Respondent was
10
   watching.
11

12      (16)   About April 29, 2015, Respondent, by Engdahl, at

13  Respondent's facility:

14      (i)   by telling its employees that Respondent understood

15  who was behind the Union, created the impression among its employees that their union

16  activities were under surveillance by Respondent;

17
        (ii)   threatened its employees with unspecified reprisals
18
   by telling its employees the Union will hurt them;
19

20      (iii)   threatened its employees with unspecified reprisals

21  by telling employees the Union will hurt everybody in the future;

22      (iv)   by telling its employees that through collective

23  bargaining, Respondent does not have to agree to anything, informed employees that it

24  would be futile for them to select the Union as their bargaining representative.

25

26

(17)    About April 29, 2015, Respondent, by Joe Remblance, at Respondent's facility:

(i)    interrogated its employees about their union membership, activities, and sympathies; and

(ii)    by watching its employees talk with each other during non-working time and immediately asking them what they were discussing, engaged in surveillance of employees engaged in union activities.

(18)    About May 1, 2015, Respondent, by David Garcia, at Respondent's facility:

(i)    by searching through the personal belongings of its employees, engaged in surveillance of its employees engaged in union activities;

(ii)    created the impression among its employees that their union activities were under surveillance by:

(A)    telling its employees that Respondent knew that employees handed a union card to another employee in the South End break room at Respondent's facility; and

(B)    informing its employees that Respondent was looking for union cards.

(iii)    by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if its employees refrained from union organizational activity.

11

(19)     About May 5, 2015, Respondent, by Engdahl and Vaivao, at Respondent's facility:

(i)     threatened its employees with unspecified reprisals, by telling its employees that discussions and heckling related to the Union would not be tolerated;

(ii)     by telling its employees that Respondent knew that there were problems on the floor, created the impression among its employees that their union activities were under surveillance by Respondent; and

(iii)     promulgated an overly-broad and discriminatory rule that heckling, insulting or potential slow-down by its employees who did not share a similar point of view would not be tolerated in response to its employees' organizing activities.

(20)     About May 8, 2015, Respondent, by a letter issued to its employees from Kent McClelland:

(i)     promulgated and has since maintained an overly-broad and discriminatory rule prohibiting its employees from engaging in unlawfully coercive behavior or bullying, in response to employees' organizing activities;

(ii)     asked its employees to ascertain and disclose to Respondent the union membership, activities, and sympathies of other employees, by telling its employees to report co-workers who violate the rule described above in paragraph 5(x)(1); and

(iii)    threatened its employees with legal prosecution if they violate the rule as described above in paragraph 5(x)(1).

(21)    About May 25, 2015, Respondent, by Karen Garzon (Garzon), at Respondent's facility:

(i)    interrogated its employees about their union membership, activities, and sympathies; and

(ii)    by removing Union flyers from non-work areas while permitting other non-work related literature to remain in non-work areas, selectively and disparately enforced Respondent's overly-broad and discriminatory no-solicitation/no-distribution rule.

(22)    About May 29, 2015, Respondent, by Vaivao, at Respondent's facility, by increasing the wage rate to certain of its employees, granted benefits to its employees to dissuade its employees from supporting or voting for the Union.

(23)    About June 15, 16, 17 and July 8, 2015, Respondent, by Garzon, at Respondent's facility, by removing Union flyers from non-work areas while permitting other non-work related literature to remain in non-work areas, selectively and disparately enforced Respondent's overly-broad and discriminatory no-solicitation/no-distribution rule.

(b)    (1)    About May 5, 2015, Respondent disciplined its employee Mario Lerma (Lerma).

(2)     Respondent engaged in the conduct described above in paragraph 5(a)(12), because Wallace assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(3)     Respondent engaged in the conduct described above in paragraph 5(b)(1) because Lerma assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

6.     By the conduct described above in paragraph 5(a), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act [29 U.S.C. § 158(a)(1)].

7.     By the conduct described above in paragraph 5(b), the Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and (3)].

8.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. § 152(6) and (7)].

9.     Certain of the unfair labor practices of Respondent described above have taken place within this judicial district.

10.     Upon information and belief, unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the Board's processes and the exercise of statutory rights for the

entire period required for the Board adjudication of this matter, a harm which cannot be remedied in due course by the Board.

11.     There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraphs 5 through 7.

13.     Granting the temporary injunctive relief requested by Petitioner will cause no undue hardship to Respondent.

14.     In balancing the equities in this matter, if injunctive relief as requested is not granted, the harm to the employees involved herein, to the public interest, and to the purposes of the Act, would clearly outweigh any harm that the grant of such injunctive relief will work on Respondent.

15.     Upon information and belief, it may fairly be anticipated that unless Respondent's conduct of the unfair labor practices described above in paragraph 5 is immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices, during the proceedings before the Board and during any subsequent proceedings before a United States Court of Appeals, with the predictable result of continued interference with the rights of employees to engage in activities protected by Section 7 of the Act [29 U.S.C. § 157], with the result that employees will be deprived of their rights under Section 7 the Act [29 U.S.C. § 157], inter alia, to form, join, or assist a labor organization or to refrain from any and all such activities, and will be denied their statutory right to engage in other concerted activities for the purpose of collective bargaining or other mutual aid

or protection, all to the detriment of the policies of the Act, the public interest, the interest of the employees involved, and the interest of the Union.

16.     Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and the public interest, and to avoid substantial, irreparable, and immediate injury to such policies and interest, and in accordance with the purposes of Section 10(j) of the Act [29 U.S.C. § 160(j)] that, pending final disposition of the matters now before the Board, Respondent be enjoined and restrained from committing the acts and conduct alleged above, similar acts and conduct, or repetitions thereof, and also be ordered to take the affirmative action set forth below in paragraph 2.

WHEREFORE, Petitioner prays:

1.     That the Court issue an order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause why an injunction should not issue and, after consideration, issue an injunction directing, enjoining, and restraining Respondent, its officers, agents, servants, representatives, successors, and assigns, and all persons acting in concert or participation with them, pending the final disposition of the matters herein now pending before the Board, to cease and desist from:

(a)     interrogating employees about their union support and activities, and the sympathies of other employees;

(b)     creating the impression among employees that their union activities are under surveillance;

(c)     engaging in surveillance of employees' union or other protected activity;

(d)     threatening employees with loss of benefits if they select Bakery, Confectionery, Tobacco Workers' and Grain Millers International Union, Local Union No. 232, AFL-CIO-CLC (the Union) as their bargaining representative;

(e)     informing employees that it is futile for them to select the Union or any other labor organization as their bargaining representative;

(f)     granting employees benefits, including, but not limited to, increased wages, in response to their and others' union activity;

(g)     soliciting employee complaints and grievances, and promising employees increased benefits and improved terms and conditions of employment if they refrain from union organizing activities;

(h)     asking employees to ascertain or disclose the union membership, activities and sympathies of other employees;

(i)     threatening employees with unspecified reprisals because of their activities in support of the Union;

(j)     promulgating and maintaining overly-broad and discriminatory rules in response to its employees' union organizing activities, and threatening employees with legal prosecution for violating such rules;

(k)     selectively and disparately enforcing its no-solicitation and no-distribution rules based on employees' union and other protected activity;

(l)     promulgating and maintaining overly-broad and discriminatory rules within its Separation Agreement and Release and Waiver;

(m)     disciplining employees by issuing them verbal warnings or otherwise because they engage in union and other protected activity to discourage employees from engaging in these activities;

(n)     discharging employees because they engaged in concerted activities involving their terms and conditions of employment or in activities in support of the Union, and in order to discourage membership in the Union or in any other labor organization;

(o)     in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them under Section 7 of the National Labor Relations Act [29 U.S.C. § 157].

2.     That the Court require Respondent to take the following affirmative actions:

(a)     Within five (5) days of this Order, withdraw its offer to Wallace of the Separation Agreement and Release and Waiver presented to him about April 6, 2015, and notify Wallace in writing that the offer has been withdrawn and that it is no longer seeking his agreement to the Separation Agreement and Release and Waiver, including, but not limited to, the following provisions:

(1)     **Paragraph 9**

Because the information in this Separation Agreement is confidential, it is agreed that you will not disclose the terms of this Separation Agreement to anyone, except that you may disclose the terms of this Separation Agreement to your family, your attorney,

your accountant, a state unemployment office, and to the extent required by a valid court order or by law.

(2)   **Paragraph 10**

All information, whether written or otherwise, regarding the Released Parties' businesses, including but not limited to financial, personnel or corporate information . . . are presumed to be confidential information of the Released Parties for purposes of this Agreement.

(3)   **Paragraph 12**

You may not use/disclose any of the Company's Confidential Information for any reason following your termination and during the transition period.

(4)   **Paragraph 13**

You agree not to make any disparaging remarks or take any action now, or at any time in the future, which could be detrimental to the Released Parties.

(b)      Within five (5) days of this Order, rescind the letter dated May 8, 2015, from Kent McClelland to its employees, including the rule therein prohibiting employees from engaging in unlawfully coercive behavior or bullying, the instruction to employees to report employees who violate that rule, and the threat of legal prosecution of employees who violate that rule, and notify employees in writing that the letter is rescinded, void, of no effect, and will not be enforced;

(c)      Within five (5) days of this Order, remove from its files, any and all records of the verbal warning issued to Mario Lerma, and within three (3) days thereafter, notify him, in writing, that this was done, and that the verbal warning will not be used against him in any way;

(d)      Within five (5) days of this Order, offer Thomas Wallace, in writing, immediate reinstatement to his former job, or if that jobs no longer exists, to  a

substantially equivalent position of employment, without prejudice to his seniority and other rights and privileges previously enjoyed, displacing if necessary any workers hired or transferred to replace him;

(e)     Within five (5) days of this Order, remove from its files, any and all records of the discharge of Thomas Wallace, and within three (3) days thereafter, notify him in writing that this was done, and that the discharge will not be used against him in any way;

(f)     Within fourteen (5) days of this Order, post copies of this Order, as well as translations of this Order provided by the Regional Director of the Board in languages other than English as necessary to ensure effective communication to Respondent's employees, at Respondent's facilities located at 2450 N. 29th Ave., Phoenix, Arizona, and  2228 N. Black Canyon Highway, Phoenix, Arizona, in all places where notices to its employees are normally posted; maintain these postings during the pendency of the Board's administrative proceeding free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its facilities to monitor compliance with this posting requirement;

(g)     Within ten (10) days of the Court's issuance of this Order, hold a mandatory meeting or meetings during working time at Respondent's facilities located at 2450 N. 29th Ave., Phoenix, Arizona, and  2228 N. Black Canyon Highway, Phoenix, Arizona, at which this Order is to be read aloud by a responsible management official in the presence of an agent of the Board, or at Respondent's option by an agent of the

Board in that official's presence, translated into languages other than English as necessary to ensure the effective communication with Respondent's employees, to all employees employed at Respondent's facilities located at 2450 N. 29th Ave., Phoenix, Arizona, and  2228 N. Black Canyon Highway, Phoenix, Arizona, including at multiple meetings as necessary to ensure that the Order is read aloud to all employees; and

(h)    Within twenty-one (21) days of this Order, file with the Court, and submit a copy to the Regional Director for Region 28 of the Board, a sworn affidavit from a responsible agent of Respondent stating, with specificity, the manner in which Respondent has complied with the terms of the Injunction Order.

3.    That upon return of the Order to Show Cause, the Court issue an Order Granting Temporary Injunction enjoining and restraining Respondent in the manner set forth above.

4.    That the Court grant such further and other relief as may be just and proper.

Dated at Phoenix, Arizona, this 8th day of September, 2015.


/s/ Judith Davila
Judith Davila, Esq.
Sara Demirok, Esq.
Elise Oviedo, Esq.

On behalf of:
Cornele A. Overstreet, Regional Director
National Labor Relations Board, Region 28
2600 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-3099